**[ECF Nos. 18-35]**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ANTHONY PRICE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE COUNTY OF SALEM, et al., <br><br> Defendants. | Civil No. 22-6042 (RBK)(EAP) |

## OPINION

This matter comes before the Court on Defendants The County of Salem and Warden John S. Cuzzupe's motions to quash subpoenas directed at eighteen third-party county correctional facilities or alternatively, for the entry of protective orders. ECF Nos. 18-35; *see* ECF No. 41 ("Defs.' Reply") at 4 (requesting that the motions to quash be construed alternatively as motions for protective orders). Plaintiffs Anthony Price, Christine Ottinger, and Robert Strauss, III have opposed the motion. ECF No. 38 ("Pls.' Opp."). Defendants have filed a reply brief. Defs.' Reply. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, Defendants' motions for protective orders are **GRANTED**.

## FACTS

This is a 42 U.S.C. § 1983 civil rights case arising out of Plaintiffs' confinement in the Salem County Jail, which is operated by Defendants. *See* ECF No. 42 ("Third Am. Compl.") ¶¶ 5-6.[1] Plaintiffs allege a series of policy and practice deficiencies at the Salem County Jail,

---

[1] Plaintiffs incorrectly labeled their Third Amended Complaint as their Second Amended

including unlawful strip searches, improper classification of being "at-risk" for self-harm or suicide, and several conditions of confinement that flow from being so classified. *Id*. ¶¶ 7-80. Relevant here are Plaintiffs' allegations regarding the adequacy of Defendants' suicide identification and prevention policy.

Upon admission to the Salem County Jail, each Plaintiff was allegedly classified as "at-risk" for self-harm or suicide based on Salem County's suicide identification and prevention policy. *Id*. ¶¶ 7, 12. Plaintiffs allege that the policy requires use of a questionnaire that is administered by correctional officers at the time of booking. *Id*. ¶¶ 14, 30. The questionnaire is comprised of approximately thirty yes-or-no questions, each of which is assigned a numerical value on an answer key to assess statistical risk. *Id*. ¶¶ 16-17. According to Plaintiffs, the Warden has determined that a score of seventy-five points or higher designates a detainee as "at-risk." *Id*. ¶ 22.

Among other things, Plaintiffs allege that Salem County's questionnaire is arbitrary because it was not approved by a medical professional. *Id*. ¶¶ 13, 24. According to Plaintiffs, Defendant Warden John Cuzzupe—who Plaintiffs allege "lacks any qualification" to design such a system—designed the questionnaire questions and assigned the numerical values. *Id*. ¶¶ 15, 18-19. Plaintiffs further allege that the Center for Family Guidance ("CFG"), which provides mental health services to the Salem County Jail, "has raised complaints to the Warden that the screening device is arbitrary." *Id*. ¶¶ 25, 27. Plaintiffs argue that "[t]he number of detainees classified as 'at-risk' lacks a reasonable relationship to those who are actually 'at-risk' for self-harm." *Id*. ¶ 35.

---

Complaint. *See* ECF No. 42; *see also infra* n.2.

## **PROCEDURAL HISTORY**

Plaintiffs Anthony Price and Christine Ottinger filed the initial Complaint in this matter on October 12, 2022, asserting the following violations: Fourth Amendment of the United States Constitution; Article 1, Section 7 of the New Jersey Constitution and the New Jersey Strip Search Statute, N.J.S.A. 2A:161A-1 *et seq.* (Count I); procedural due process (Counts II, V); the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (Counts III-V, VII); and the New Jersey Law Against Discrimination (Count VIII). ECF No. 1. On October 20, 2022, Plaintiffs filed their First Amended Complaint, which added Robert Strauss, III as a Plaintiff. ECF No. 4. On December 12, 2022, Defendants filed a Motion to Dismiss the First Amended Complaint in its entirety. ECF No. 6. After the Court denied that motion, *see* ECF No. 11, Defendants filed their Answer to the First Amended Complaint, *see* ECF No. 12.

On August 11, 2023, Plaintiffs moved to amend the First Amended Complaint to add Sarah Provost as a Plaintiff. *See* ECF No. 15. While that motion was pending, on August 23, 2023, Plaintiffs again moved to amend their First Amended Complaint to "amplify" Count II and change the procedural due process claim in Count II to a substantive due process claim. *See* ECF No. 17. On September 18, 2023, the Court granted both motions and ordered Plaintiffs to file a Second Amended Complaint and a Third Amended Complaint within seven days. *See* ECF Nos. 39, 40. On December 13, 2023, Plaintiffs filed their Second Amended Complaint, *see* ECF No. 63, and on September 27, 2023, they filed their Third Amended Complaint, *see* ECF No. 42.[2]

---

[2] The Court notes that the Second and Third Amended Complaints were filed out of order and mislabeled. In response to the Court's Order that each amended pleading be uploaded to the docket within seven days of the Court's Orders, *see* ECF Nos. 39, 40, Plaintiffs filed only the Third Amended Complaint, *see* Third Am. Compl., and failed to file the Second Amended Complaint. In reviewing the docket, the Court noted this omission, and on December 4, 2023, ordered Plaintiffs to file the Second Amended Complaint. *See* ECF No. 59.

On August 23, 2023, Plaintiffs served identical subpoenas and interrogatories on eighteen New Jersey county correctional facilities: Atlantic County Justice Facility, ECF No. 18-3; Bergen County Jail, ECF No. 19-3; Burlington County Department of Corrections, ECF No. 20-3; Camden County Department of Corrections, ECF No. 21-3; Cape May County Correctional Center, ECF No. 22-3; Essex County Correctional Facility, ECF No. 23-3; Hudson County Correctional Facility, ECF No. 24-3; Hunterdon County Jail, ECF No. 25-3; Mercer County Correctional Facility, ECF No. 26-3; Middlesex County Office of Adult Corrections, ECF No. 27-3; Monmouth County Correctional Facility, ECF No. 28-3; Morris County Correctional Facility, ECF No. 29-3; Ocean County Department of Corrections, ECF No. 30-3; Passaic County Jail, ECF No. 31-3; Somerset County Sheriff's Office, ECF No. 32-3; Sussex County Jail, ECF No. 33-3; Union County Jail, ECF No. 34-3; and Warren County Correctional Facility, ECF No. 35-3. Each subpoena sought three categories of information: (1) "a yearly census for the county correctional facility" for the years 2015 through 2022; (2) the number of detainees classified as "at-risk" for self-harm or suicide during the same range of years; and (3) a description of each facility's suicide identification and prevention policy, including how screening is conducted and what type of questionnaire is used. *See, e.g.*, ECF No. 18-3 at 4-5.

On August 30-31, 2023, Defendants moved to quash all eighteen subpoenas. *See* ECF Nos. 18-35. Plaintiffs filed an opposition brief on September 18, 2023. Pls.' Opp. Defendants filed a reply brief on September 25, 2023, which alternatively requested that the Court construe their motions to quash as motions for protective orders. Defs.' Reply.

## **ANALYSIS**

### **I.     Motions to Quash Subpoenas**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

4

claim or defense and is proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." "Courts have construed Rule 26(b)(1) liberally, creating a broad vista for discovery which would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). Moreover, relevance is more loosely construed at the discovery stage than at trial. *Id*. "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). However, "the standards for nonparty discovery require a stronger showing of relevance that for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990) (citing cases); *see also Hall v. Johnson & Johnson*, No. 18-1833, 2023 WL 8830784, at *4 (D.N.J. Dec. 20, 2023) (noting that courts in this District have recognized and applied this principle).

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas.[3] If the information sought falls within the scope of permissible discovery, then a party may serve a subpoena on a third party to obtain documents, testimony, and/or other information. *See* Fed. R. Civ. P. 45(c). Rule 45, however, is not without limits. Rule 45(d) sets forth the circumstances under which a court may limit or prohibit discovery. *See* Fed. R. Civ. P. 45(d). Rule 45(d)(3) provides, in relevant part: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

---

[3] The scope of discovery under Rule 45 and Rule 26(b) is the same. *Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014) (citing *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)).

As a threshold matter, however, a party moving to quash a subpoena must have standing to bring such a challenge. "Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014) (citing *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434-35 (E.D. Pa. 2001)). "However, 'a party has standing to bring a Motion to Quash or modify a subpoena upon a nonparty when the party claims a personal privilege in the production sought.'" *Id*. (quoting *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007)); *see also, e.g.*, *Ramos v. Walmart, Inc.*, No. 21-13827, 2023 WL 2327208, at *3 (D.N.J. Mar. 2, 2023) (finding that plaintiffs had standing to move to quash subpoenas served on their third-party prior employers because they had a sufficient personal interest in their employment records); *Malibu Media, LLC v. Doe*, No. 15-1742, 2015 WL 5996319, at *2 (D.N.J. Oct. 14, 2015) (holding that a defendant had sufficient interest in his personal identifying information to seek an order quashing a subpoena to a third-party internet service provider).

Here, the Court finds that Defendants have no personal privilege in the production sought by Plaintiffs in their eighteen subpoenas. In their briefing, Defendants fail to articulate any personal interest in the data or policies sought from other county correctional facilities. In fact, Defendants essentially renounce any such personal interest. *See* ECF No. 18-2 at 5 ("[T]he policies, procedures, and any information from the other eighteen (18) New Jersey correctional facilities has no impact on how Defendants operate Salem County Correctional Facility."). The Court similarly fails to see any such relationship. Accordingly, the Court concludes that Defendants do not have standing to quash the eighteen subpoenas under Rule 45.

## II. Motions for Protective Orders

Where a party does not have standing to challenge a third-party subpoena under Rule 45, they may have standing to move for a protective order pursuant to Rule 26(c). *Ramos*, 2023 WL

2327208, at *3 n.3; *Aetrex*, 2014 WL 7073466, at *4-5; *EEOC v. United Galaxy*, No. 10-4987, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011) (finding that although the EEOC lacked standing for a motion to quash under Rule 45, it could file a motion for a protective order if it had standing under Rule 26(c) (citation omitted)); *see Staff4Jobs, LLC v. List Logistics, LLC*, No. 18-13399, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020) (deciding *sua sponte* to consider a Rule 45 motion to quash as one for a protective order pursuant to Rule 26, instead of resolving whether the movant had standing under Rule 45).

Federal Rule of Civil Procedure 26(c) governs protective orders. Rule 26(c)(1) states that, "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Protective orders are "intended to offer litigants a measure of privacy" and require "balancing between public and private concerns." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "The party seeking a protective order over discovery material must demonstrate that 'good cause' exists for the order." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quotation omitted). "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Id.* (quoting *Pansy*, 23 F.3d at 786). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Pansy*, 23 F.3d at 786 (quoting *Cipollone v. Liggett Grp.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

In *Pansy v. Borough of Stroudsburg*, 23 F.3d at 787-91, the Third Circuit set forth a non-exhaustive list of factors "that courts may consider when determining whether good cause exists and, by extension, whether a protective order should issue." *In re Avandia*, 924 F.3d at 671. Those factors are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). The decision to issue a protective order is within the discretion of the Court. *See Pansy*, 23 F.3d at 789; *see also Glenmede Tr.*, 56 F.3d at 483 (observing that a "district court is best situated to determine what factors are relevant" to the dispute).

Here, Defendants' only argument in support of a protective order is that the subpoenas seek irrelevant information. *See* Defs.' Reply at 5-7. Courts in this District have held that the relevance of the subpoenaed discovery is an important factor in deciding a motion for a protective order. *See Ramos*, 2023 WL 2327208, at *3 n.3 (noting that a court may consider "the discoverability of the subpoenaed information with respect to its relevance, breadth and proportionality"); *Hancock v. Credit Pros Int'l Corp.*, No. 20-2826, 2021 WL 2948154, at *8 (D.N.J. July 13, 2021) (evaluating relevance in the Rule 26(c) analysis); *Staff4Jobs*, 2020 WL 13580942, at *3 (granting a motion for a protective order based on "relevance concerns"); *Aetrex*, 2014 WL 7073466, at *5 (holding that a party had "standing under Rule 26 to move for a protective order to enjoin the production of irrelevant information for subpoenas issued to non-parties"); *United Galaxy*, 2011 WL 4072039, at *2 (noting that a party can move for a protective order "regarding subpoenas issued to non-parties which seek irrelevant information." (citation omitted)).

Relevance is "viewed in light of the allegations of the complaint, not as to evidentiary admissibility." *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). Although Plaintiffs do not specify which Counts of the Third Amended Complaint establish the relevance of the subpoenaed

8

information, the Court finds that two counts in the Third Amended Complaint may have a connection to the allegedly improper at-risk identification procedures: Counts II and III. *See* Third Am. Compl. ¶¶ 100-114.

In Count II, Plaintiffs assert due process claims under the Fourteenth Amendment to the United States Constitution and Article 1, Section 1 of the New Jersey Constitution. *See* Third Am. Compl. ¶¶ 100-107. Plaintiffs allege that they "suffered punishment because they were arbitrarily classified as being 'at-risk.'" *Id.* ¶ 103. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).[4] To determine whether a challenged condition of pretrial confinement amounts to punishment,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose . . . and whether it appears excessive in relation to [that] purpose. . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Hubbard*, 399 F.3d 158 (quoting *Bell*, 441 U.S. at 538-39).[5] Whether prison conditions constitute punishment requires a review of the "totality of circumstances within an institution." *Id.* at 160 (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 996 (3d Cir. 1983)).

---

[4] Because the plaintiffs in *Bell* were federal pretrial detainees, the Fifth Amendment Due Process Clause controlled the Supreme Court's analysis. *Hubbard v. Taylor*, 399 F.3d 150, 158 n.13 (3d Cir. 2005). Here, where Plaintiffs are state pretrial detainees, "any applicable constraints must arise from the Due Process Clause of the Fourteenth Amendment. However, the Court's due process analysis under the Fifth Amendment in *Bell* nevertheless controls that inquiry." *Id.*

[5] The Court's research has not revealed a New Jersey case holding that different principles of law apply under the New Jersey Constitution.

In Count III, Plaintiffs allege that Defendants' "at-risk" classification policy violates N.J.A.C. 10A:31-13.24, which requires adult county correctional facilities to develop a suicide prevention and intervention plan. *See* Third Am. Compl. ¶¶ 109-114. That regulation further requires any such plan to be "reviewed and approved by a qualified medical or mental health professional." N.J.A.C. 10A:31-13.24.

Plaintiffs argue that Salem County's suicide identification policy is arbitrary because it does not conform to this regulation and thus, an excessive number of pretrial detainees are identified as "at risk." Pls.' Opp. at 10-11. Plaintiffs further argue that the subpoenaed information is relevant to their claims because it would establish that other county correctional facilities that follow the regulation have non-arbitrary suicide identification policies that result in fewer detainees being classified as "at risk." *See id*.

Defendants counter that "the policies, procedures, and any information from the other eighteen (18) New Jersey correctional facilities has no impact on how Defendants operate the Salem County Correctional Facility and therefore is not likely to lead to the discovery of admissible evidence." Defs.' Reply at 5. They note that "two counties could have different policies or procedures for screening 'at-risk' detainees and both policies, though different, could be compliant with the New Jersey and U.S. Constitutional standards." *Id*. at 9-10.

Here, where "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery," *Stamy*, 138 F.R.D. at 419, the Court finds that Plaintiffs have failed to demonstrate the relevance of the requested information to the allegations in the Third Amended Complaint. To succeed in proving the allegations in their Third Amended Complaint, Plaintiffs must prove that the Salem County Jail's suicide prevention policy was unlawful under the standards set forth above. Based on the current record, the Court fails to see how Plaintiffs would be aided in that effort with evidence of how a correctional facility in a different county,

10

with a difficult facility, addressing a different prison population is run. Simply put, another correctional facility's compliance or noncompliance with the regulation has no bearing on whether Defendants have violated the law. *Cf. Jones v. DeRosa*, 238 F.R.D. 157, 163-64 (D.N.J. 2006) (granting in part a motion to quash a subpoena with respect to internal affairs and personnel files for nonparty officers because they were irrelevant to proving the claims against the named defendant officers). Accordingly, the Court finds that the discovery sought by Plaintiffs is neither relevant nor proportional to the needs of this case. For these reasons, the Court **GRANTS** Defendants' motions for protective orders.

## CONCLUSION

For the reasons stated above, and for good cause shown, the Court therefore **GRANTS** Defendants' motions for protective orders. An appropriate Order accompanies this Opinion.

s/ Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc: Hon. Robert B. Kugler, U.S.D.J.