**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY PRICE, et al., | : |
| Plaintiffs, | : Civil Action No. 22-6042 (MAS)(JTQ) |
| v. | : **MEMORANDUM OPINION AND ORDER** |
| THE COUNTY OF SALEM, et al., | : |
| Defendants. | : |

Before the Court is Plaintiffs' Motion to compel certain discovery from Defendants, the County of Salem and John S. Cuzzupe ("Defendants"). For the reasons set forth below, the information Plaintiffs seek is neither relevant to Plaintiffs' individualized claims nor proportional to the needs of the case. Consequently, Plaintiffs' Motion is **DENIED**.

I. **BACKGROUND**

Plaintiffs filed this Motion seeking an Order compelling Defendants to produce a "statistical sample" of protected health information ("PHI") from nonparty Salem County Correctional Facility ("SCCF") inmates to determine their suicidal "at-risk" status. Plaintiffs supposedly seek this information to support their allegations that Defendants arbitrarily over-classify SCCF inmates as "at-risk," resulting in what Plaintiffs claim to be improper strip searches, stigmatization, and excessive surveillance, among other practices. ECF No. 75-1 ("Moving Br.") at 4.

Based upon Defendants' representations (as Plaintiffs have not attached the document requests to the Motion), the requests that are the subject of this Motion seek the following information:

- **Request No. 16**: "All corresponding evaluations by a medical professional either releasing these individuals from 'at-risk' or maintaining their 'at-risk' status;"

- **Request No. 55**: "All documents reflecting transfers to mental health facilities for detainees who must be released but are on the 'at-risk' unit and have not yet been seen by a mental health professional;" and

- **Request No. 56**: "All documents reflecting individuals who were released from the jail while on 'at[-]risk' status."

ECF No. 80 ("Opp") at 3-4.

Plaintiffs' Motion follows two Orders entered by the Honorable Elizabeth A. Pascal, U.S.M.J. The first Order, dated November 21, 2023, permitted Plaintiffs to amend Document Request Numbers 16, 55, and 56 "to request a statistical sample of the relevant documents." ECF No. 57. Defendants submit that Plaintiffs did not comply with the November 21, 2023 Order's deadline of November 30, 2023; instead, Plaintiffs requested to review 700 inmates' files on December 15, 2023. Opp. at 4. Thereafter, on January 11, 2024, Magistrate Judge Pascal granted Plaintiffs leave to file a motion to compel discovery. ECF No. 72. And on February 9, 2024, Plaintiffs filed this Motion, requesting *inter alia* suicide questionnaires, psychological evaluations, documents related to inmates' referrals to a mental health facility from

2

435 non-party SCCF inmates. Moving Br. Three days later, on February 12, 2024, Plaintiffs filed an amended proposed order reducing their request to a random sample of 150 inmates. ECF No. 76.

Plaintiffs argue they are entitled to this information and the request is "proportional" because it will shed light on Defendants' arbitrary suicide classification system. Moving Br. at 9-10. Plaintiffs contend that "HIPAA expressly permits third party PHI when a court determines under Fed. R. Civ. P. 26 that such discovery should be permitted" and that a qualified protective order from the Court will protect the 150 inmates' privacy interests. *Id.* at 8-9. Plaintiffs' amended proposed order filed in connection with this Motion suggests that the Parties may take notes and create a spreadsheet on the statistical information gleaned from the inmate files, excluding any identifying information. ECF No. 76-1.

Defendants object to the disclosure of this sensitive information, as well as the random sampling Plaintiffs suggest. According to Defendants, this litigation involves four individuals (*not* a putative class) who claim *their own rights* have been violated and thus seek relief on their own behalf. Opp. at 9-10. To that end, Defendants posit Plaintiffs are not entitled to the privileged medical information of 150 nonparties. *Id*. Defendants emphasize that because Plaintiffs elected to opt out of a prior class action,[1] the statistical sample requested here will have no bearing on the individualized claims Plaintiffs are pursuing. *Id*. at 9. Defendants also assert that SCCF's current policies are not indicative of the way things were done during the

---

[1] *Stevenson, et al. v. Salem, et al.*, SLM-L-92-17.

3

period of alleged violative conduct—2015 to 2020, *id*. at 9-10, and that responding to the request would be unduly burdensome. *Id*. at 11-12.[2]

## II. LEGAL STANDARD

The scope and limits of discovery are defined by Rule 26(b)(1), which provides:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Rule 26 is liberally construed to favor disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." *Kaye v. Nussey*, 2022 WL 3227578, at *2 (D.N.J. Aug. 10, 2022). "[A] court may order the discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the litigation upon a finding of good cause." *Campbell v. Sedgwick Detert, Moran & Arnold*, 2013 WL 1314429, at *8 (D.N.J. Mar. 28, 2013). However, "[a]lthough the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed." *Hayes v. Bergus*, 2015 WL 5666128, at *2 (D.N.J. Sept. 24, 2015). The "the sole purpose of discovery is to add flesh for trial on the parties' respective claims and defenses," not to serve as a "fishing expedition for potential claims or defenses." *Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*, 2013 WL 6858956, at *2

---

[2] Defendants also raise an evidentiary objection that Plaintiffs' proposed spreadsheet will constitute inadmissible hearsay. Opp. at 13.


(D.N.J. Dec. 23, 2013), *aff'd*, 2014 WL 3573339 (D.N.J. July 21, 2014), and *aff'd*, 674 F. App'x 174 (3d Cir. 2017).

Furthermore, Rule 37 provides that, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). A party moving to compel discovery "bears the initial burden of proving the relevance of the requested information." *Ford v. City of Pittsburgh*, 2015 WL 12777652, at *1 (W.D. Pa. Aug. 17, 2015). Once that initial burden is met, "[t]he party objecting to discovery must show that the requested materials do not fall within the broad scope of relevance ... or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure...." *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014) (internal quotation marks omitted). "Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the Court's discretion and judgment." *Ford*, 2015 WL 12777652, at *1.

### III.  ANALYSIS

#### A. The Requested Information is Irrelevant to Plaintiffs' Claims

What Plaintiffs overlook in arguing that the production of the requested information should be compelled is that before the Court is able to address whether the discovery sought is "proportional to the needs of the case," it must determine whether the discovery is "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs instead urge the Court to simply find that the requested

information is "proportional to the context of what is at issue in the litigation," seemingly hoping to bypass a relevance determination. Moving Br. at 3. Conducting such an analysis to "enjoin Defendants' practices" as "a matter of public interest" absent any consideration for whether the requested documents are relevant to the claims before the Court would be to disregard not only the Federal Rules of Civil Procedure, but decades of legal precedent. *See id.*

It is beyond settled that "[t]he test for determining whether material is discoverable is relevancy." *Cont'l Access Control Sys., Inc. v. Racal-Vikonics, Inc.*, 101 F.R.D. 418, 418 (E.D. Pa. 1983); *see also Forrest v. United States*, 1996 WL 171539, at *2 (E.D. Pa. Apr. 11, 1996) (finding "the test of discoverability is the relevance standard of FRCP 26(b)(1)"). And it is Plaintiffs' burden—as "the party seeking discovery"—to "demonstrate the relevancy of the requested information." *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, 2023 WL 179963, at *2 (D.N.J. Jan. 13, 2023); *Ford*, 2015 WL 12777652, at *1. Plaintiffs have not sustained their burden here.

Indeed, even under a liberal standard, Plaintiffs have failed to demonstrate how the privileged medical files of 150 non-party inmates are relevant to any of Plaintiffs' claims. As Defendants correctly point out, Plaintiffs are four individuals who opted out of a class action lawsuit and now seek a statistical sample of inmate files from 2015 to 2020. *See* Opp. at 9, 10. Plaintiffs do not, and cannot, make any argument that the private medical files of 150 SCCF inmates support a claim that Defendants violated their *individual* rights. Plaintiffs' broad assertion that "[t]he right of citizens to be free of arbitrary government punishment is a cornerstone to

6

democracy" does nothing to the analysis. Nor does it convince the Court that Defendants' "at-risk" classification of a random sample of current SCCF inmates is relevant to whether the rights of four Plaintiffs were violated over four years ago. *See* Moving Br. at 10.

### B. Even if the Requested Documents were Relevant, Plaintiffs Have Made No Effort to Properly Request the Inmates' Protected Information.

Even if Plaintiffs could demonstrate how other current SCCF inmates' medical files are relevant to their claims, the Court would still shield this sensitive and highly-personal information from disclosure because the inmates have a fundamental privacy interest in their personal medical records.

Importantly, "[d]iscovery is only available as to nonprivileged documents." *Miller v. Allstate Fire & Cas. Ins. Co.*, 2009 WL 700142, at *3 (W.D. Pa. Mar. 17, 2009) (citing Fed. R. Civ. P. 26(b)(1)). And "[t]here can be no question that . . . medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001) (holding inmates have a privacy interest in medical information). "It has been recognized in various contexts that medical records and information stand on a different plane than other relevant material." *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 WL 1623870, at *20 (D.N.J. May 9, 2012). To be sure, "when comparing Fed. R. Civ. P. 35 with Fed. R. Civ. P. 26(b), it is clear that the Federal Rules of Civil Procedure impose a higher burden for discovery of reports of the physical and mental

7

condition of a party or other person than for discovery generally." *Id.* (internal quotation marks omitted).

Moreover, "[a]ny release of [protected] health information must conform with the Health Insurance Portability and Accountability Act of 1996 ('HIPAA')." *Arvidson v. Buchar*, 2018 WL 10613032, at *7 (V.I. Super. June 6, 2018). HIPAA "establishes that health care providers may not use or disclose HIPAA protected health information without written authorization from the individual or providing the individual with an opportunity to agree or object in instances where a judicial or administrative proceeding requires disclosure." *Id.* However, PHI may be disclosed in the course of a judicial or administrative proceeding in several circumstances. Specifically, disclosures may be made, "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i). And where there is no court order, PHI may nonetheless be disclosed "[i]n response to a subpoena, discovery request, or other lawful process" if one of the following conditions is met:

> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

8

45 C.F.R. § 164.512(e)(1)(ii).

Contrary to what Plaintiffs assert, the Court has not entered a "Protective Order which provides for the designation of Protected Health Information as ATTORNEY EYES / EXPERT EYES ONLY." Moving Br. at 3. Rather, the Parties' Discovery Confidentiality Order ("DCO"), entered on June 5, 2023, protects "highly sensitive business or personal information." *Id.*; ECF No. 36 ¶2. The DCO does not appear to protect information that is also protected by HIPAA and its additional disclosure protections and releases. And Plaintiffs have not identified any specific section of the DCO to suggest otherwise. *Cf. Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, 2023 WL 5979835, at *2 (D.N.J. Aug. 28, 2023), report and recommendation adopted, 2023 WL 5985187 (D.N.J. Sept. 14, 2023) (noting that the Court entered the parties' stipulated discovery confidentiality order, which expressly covered 'protected health information'"). As such, Plaintiffs' position that the Attorneys' Eyes Only designation is sufficient to protect the 150 inmates' privacy interests appears to be based on their misunderstanding of the protections afforded by the DCO.

Not only is the requested medical information not afforded the protection of a court order, but Plaintiffs have never even requested that such an order be entered. Accordingly, to facilitate the exchange of the requested discovery, Plaintiffs are looking for the Court to grant relief they never asked for. Without making any effort to obtain a protective order or notify the inmates of the requested PHI, Plaintiffs

9

cannot demonstrate that the disclosure of the SCCF inmates' files should be permitted. *See* 45 C.F.R. § 164.512(e)(1).

Furthermore, Plaintiffs cannot argue that they have now provided a sufficient basis for the Court to enter a protective order with the filing of this Motion. Rule 26(c) permits the Court, "for good cause" to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

Here, Plaintiffs have provided nothing other than "broad allegations of harm," and not even harm to them individually. They make unsupported assertions such as, "[t]he context of this case should persuade the Court to allow an evaluation of [SCCF's] suicide classification system." Moving Br. at 10. Such conclusory statements provide an insufficient basis for the Court to infringe upon a privacy right that has been so well-protected that it stands "on a different plane than other relevant material." *See Princeton Healthcare Sys.*, 2012 WL 1623870, at *20.

## IV.   CONCLUSION AND ORDER

For the reasons set forth herein, Plaintiffs have failed to demonstrate that the information requested is relevant to their claims or proportional to the needs of the

10

case. Further, the documents requested contain privileged medical information, to which Plaintiffs have established no entitlement.[3]

Accordingly, for the reasons stated above,

IT IS on this 23rd day of July 2024,

**ORDERED** that Plaintiffs' Motion to Compel Discovery (ECF No. 75) is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to terminate ECF No. 75.

<div style="text-align:right">

s/ Hon. Justin T. Quinn
JUSTIN T. QUINN
UNITED STATES MAGISTRATE JUDGE

</div>

---

[3] The Court need not address Defendants' arguments that Plaintiffs' document requests are unduly burdensome and would lead to the production of inadmissible hearsay. Opp. at 11-13. However, for the reasons set forth above, an undue burden would be imposed by the time it would take to obtain the necessary HIPAA authorizations from each of the 150 inmates to permit disclosure of their medical files.