**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANTHONY PRICE, et al., | : |
|  | : |
| Plaintiffs, | : Civil Action No. 22-6042 (MAS) (JTQ) |
|  | : |
| v. | : **MEMORANDUM OPINION** |
|  | : **AND ORDER** |
|  | : |
| THE COUNTY OF SALEM, et al., | : |
|  | : |
| Defendants. | : |
|  | : |

Since the inception of this case, plaintiffs Anthony Price, Christine Ottinger, Robert Strauss, and Sarah Provost's (collectively, "Plaintiffs") have made the same mistake. They want the Court to treat the instant litigation as a continuation of a New Jersey state court class action lawsuit that all four Plaintiffs *opted out of*. *See Stevenson, et al. v. Salem, et al.*, SLM-L-92-17. This Court has issued multiple decisions declining to do so, yet Plaintiffs continue to rely on evidence and rulings from the class action as if these cases are one in the same.

Unsurprisingly, relevance problems have permeated Plaintiffs' case and persist in their pending motion for spoliation sanctions. In seeking to have the Court impose an adverse inference against defendants the County of Salem and John S. Cuzzupe ("Defendants"), Plaintiffs once again seem to forget that they are four individuals, not members of the *Stevenson* class. They do not, and cannot, demonstrate that they are entitled to the same discovery as the plaintiffs in the class action they declined to join. They likewise fail to show what relevance the discovery

appropriately exchanged in *Stevenson* would have to their individual claims. And the requested discovery that *does* pertain to these Plaintiffs has either already been produced or Defendants have certified that they are not in possession of additional responsive information. Thus, Plaintiffs have no basis for asking the Court to sanction Defendants.

Accordingly, the Court finds that Plaintiffs have made an insufficient showing that any sanction under Federal Rule of Civil Procedure 37 would be appropriate here. Plaintiffs' motion is therefore DENIED.

## I.    BACKGROUND[1]

All four Plaintiffs were confined in the Salem County Jail at various times from 2015 to 2020 and brought this action alleging civil rights violations under 42 U.S.C. § 1983. *See* ECF No. 42, Third Amended Complaint.[2] Each Plaintiff was classified as "at-risk" while admitted to the Salem County Correctional Facility ("SCCF") through SCCF's booking and suicide identification policy and practice (the "Policy"). *Id.* ¶¶ 7, 12. Plaintiffs allege that Defendants' Policy is unlawful based upon its "arbitrary" questionnaire for classifying prisoners as "at-risk" for self-harm, the conditions of confinement, and strip searches imposed upon those classified as "at risk." *Id.* ¶¶ 13-

---

[1] The Court has set forth the background of this matter at length in its previous decision (ECF No. 82) and therefore limits its discussion herein to the salient facts.

[2] The Second and Third Amended Complaints were filed out of order and mislabeled. In response to the Court's Order that each amended pleading be uploaded to the docket within seven days of the Court's Orders *(*ECF Nos. 39, 40), Plaintiffs filed only the Third Amended Complaint. ECF No. 42. On December 4, 2023, the Court directed Plaintiff to file the omitted Second Amended Complaint. ECF No. 59. Thereafter, the Second Amended Complaint was filed at ECF No. 63.

19, 43-63.

Plaintiffs initially brought this action in 2022 and since then the Court has resolved two discovery disputes, both of which arose out of discovery sought by Plaintiffs. ECF Nos. 82 & 106. In the first decision, the Court construed Defendants' motions to quash the subpoenas Plaintiffs served on 18 county correctional facilities throughout the state of New Jersey as motions for protective orders. ECF No. 82. The Court granted the motions and concluded that Plaintiffs failed to establish how evidence from a *different* correctional facility with a *different* prison population has any impact on how Defendants operate the SCCF. *Id*. at 10-11.

The second decision was issued on July 24, 2024.  In that opinion, the Court denied Plaintiffs' motion to compel Defendants to produce a "statistical sample" of protected health information from nonparty SCCF inmates to determine their suicidal "at-risk" status. ECF No. 106. The information Plaintiffs sought included suicide questionnaires, psychological evaluations, and documents related to the inmates' referrals to mental health facilities. *Id*. at 2-3.[3] The Court again found that Plaintiffs failed to establish the relevance that the protected medical files from 150 nonparty inmates had to any of their *individual* claims. The Court's decision contained an explicit reminder that "Plaintiffs are four individuals who opted out of a class action lawsuit." *Id*. at 6.

In this motion, Plaintiffs claim Defendants spoliated: (1) footage of non-party SCCF inmates from closed-circuit television ("CCTV") cameras that they allege would

---

[3] The pages cited herein are those provided by PACER.

have shown SCCF's improper strip search practices (ECF No. 118-1, Moving Brief ("Mov. Br.") at 15-22); and (2) Plaintiffs' jail and medical files on their "at-risk" classifications and SCCF's related practices, including regular strip searches (*id.* at 23-36). Defendants have a different view; their opposition makes explicit that all relevant and responsive discovery in their possession has been produced. *See, e.g.*, ECF No. 125, Opposition Brief ("Opp. Br.") at 28. They contend that they satisfied their discovery obligations by taking the proper steps to preserve the requested CCTV video footage, saving a total of approximately six months of footage, and updating the Court on its production via correspondence from September to December 2023. *See id.* at 21, 24-25. In reply, Plaintiffs argue relevance only in relation to *Stevenson*. ECF No. 128, Reply Brief ("Reply") at 9-13. They claim Defendants have made factual admissions unsupported by the record (*id.* at 3-4, 6, 8-9) and accuse Defendants of providing false discovery responses to gain "leverage to argue that the alleged occurrences . . . never occurred" (*id.* at 14-16).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes the Court to impose sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).  Such sanctions may include

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* Whether to impose sanctions and the choice of appropriate sanctions is committed to the sound discretion of the Court. *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 217 (3d Cir. 2003). This discretion "is not . . . carte blanche"; instead, a "court[']s discretion [is limited] in two ways: First, any sanction must be 'just'; second, the sanction must be *specifically related* to the particular claim which was at issue in the order to provide discovery." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 580 (3d Cir. 2018) (quoting *Harris v. City of Phila.*, 47 F.3d 1311, 1330 (3d Cir. 1995) (emphasis in original) (internal quotation marks omitted).

These limitations are "rooted in notions of due process," the first representing "the general due process restrictions on the court's discretion" and the second requiring "that a 'specific nexus' exist between the sanction imposed and the underlying discovery violations." *Id.* (citing *Harris*, 47 F.3d at 1330-31). Said another way, "it requires that the unproduced discovery be sufficiently material to the administration of due process to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit." *Id.* (internal quotation marks omitted).

### III.    ANALYSIS

Here, as noted above, there are two discernable categories of evidence[4] that Plaintiffs allege Defendants spoliated:

1.  **CCTV Footage:** The footage that Defendants in *Stevenson* were ordered to retain in the state court's December 18, 2018 Order – "all CCTV from the earliest currently retained date, being 105 days back from October 5, 2018 through the date of this order" (ECF No. 118-5); and

2.  **Plaintiffs' Jail and Medical Records:** "[S]waths of documents" from Plaintiffs' jail and medical records, including documentation of strip searches, electronically maintained "upon the retention letter and class action complaints" (Mov. Br. at 23).

For the reasons set forth below, the Court has no trouble finding that Plaintiffs have not sufficiently established the elements of spoliation for either category of evidence.

### A.  CCTV Footage — Plaintiffs Are Not Entitled to Sanctions

#### i.  Plaintiffs Have Not Shown The CCTV Footage Is Relevant.

It is settled that if the party seeking spoliation cannot establish the relevance of the requested discovery, there is no basis for imposing sanctions. Indeed, establishing relevance is a "threshold issue" that the movant must clear. *Air Prods. & Chemicals, Inc. v. Wiesemann*, 2017 WL 758417, at *1 (D. Del. Feb. 27, 2017). And courts do not hesitate to deny sanctions motions where, as here, the moving party is unable to show relevance. *See, e.g. Flanders v. Dzugan*, 2015 WL 5022734, at *5 (W.D. Pa. Aug. 24, 2015).

---

[4] The Court addresses all of Plaintiffs' spoliation claims despite Defendants' contention that Plaintiffs were only permitted to seek sanctions for the alleged spoliation of the CCTV footage, not the records that Plaintiffs claim were not produced. Opp. Br. at 26-27.

### 1. *Stevenson* Has No Bearing On Relevance.

Here, Plaintiffs try to tie evidence that was relevant to the class in *Stevenson* to their individual claims in this case. The Court is unmoved. Plaintiffs incorrectly (and repeatedly) identify themselves as "parties to the Stevenson litigation" and "intended beneficiaries of those orders." Reply at 10. This is plainly untrue since Plaintiffs acknowledge that they "opted out" of "Stevenson v. Salem County SLM-92-17" in their operative Complaint. ECF No. 42 at 2.

Their intentional decision to opt out, however, does not stop Plaintiffs from continually attempting to enjoy the fruits of the class action.  Indeed, Plaintiffs base their arguments on the submissions and rulings in a *different* case before a *different* court involving *different* plaintiffs. *See, e.g.*, Mov. Br. at 9 ("Salem County testified in the Stevenson v. Salem County SLM 92-17 case that it ceased conducting two-a-day strip searches…"); *id*. at 17 (reciting *Stevenson* procedural history, including 2017 and 2018 Orders); *id*. at 40-41 (discussing the "Control Group"). Plaintiffs even attach documents from the *Stevenson* litigation, including discovery exchanged, court orders, and deposition transcripts, many of which have been copied so many times, the text is nearly illegible. ECF Nos. 118-4 to 118-16 (Plaintiffs' Exhibits 1-8, 14-15, 23, 24, 26, 53-62).[5] Worse, Plaintiffs fail to explain how these exhibits support their

---

[5] The Court notes that it has only been able to review the exhibits filed on the docket. Plaintiffs never filed the exhibits that they indicated would be filed under seal. *See* ECF Nos. 119-120 (attaching Plaintiffs' Exhibits 18-20, 22, 31, 32, 34, 35, 37, 38-46, 64 with only "Filed Under Seal" pages). And where Plaintiffs did successfully submit exhibits, the Court's review was made difficult by Plaintiffs' haphazard filings, with random batches of exhibits included as single attachments.

argument that spoliation and sanctions are appropriate here. Plaintiffs instead attach what appear to be random documents as exhibits to a barebones certification (that does little to effectively identify them) simply expecting the Court to connect the dots. ECF No. 118-3.[6] Plaintiffs' decision to include certain documents—with little to no explanation of their connection to this action or the prior class case—leaves this Court with a piecemeal understanding of what transpired in the state court action and, in turn, Plaintiffs' arguments here. *See id.* This is improper.

Among other things, Plaintiffs fail to identify the *Stevenson* class definition, any facts surrounding their opt out, or even who the named defendants were. It is not the job of this Court to make Plaintiffs' arguments for them. *See, e.g.*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 334, (2006) (the "system relies chiefly on the *parties* to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication"); *United States v. Ward*, 760 F. Supp. 2d 480, 483 (D.N.J. 2011) ("[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003)).

---

[6] Plaintiffs also fail to accurately refer the Court to the *Stevenson* documents they rely on. *See, e.g.*, Mov. Br. at 11 (asserting that Salem County's Suicide Identification and Prevention Policy "is approved by the Warden – not a mental health professional" but citing page and line numbers from a 2018 deposition transcript that do not stand for the proposition asserted); *id.* (citing Plaintiffs' Exhibit 61 at pages 181-182, which are not included in the deposition excerpt provided); *id.* at 11 (citing deposition transcripts without the Exhibit number used to attach the transcripts to Plaintiffs' filing); *id.* at 17 (citing entire 12-page court transcript without pin cite).

Moreover, Plaintiffs' reliance on *Stevenson* filings contradicts well-settled law that prohibits opt out plaintiffs from utilizing discovery exchanged in resolved class actions lawsuits to bring independent claims. Specifically, the Third Circuit has held that to permit later use of evidence that was the subject of a class action "would impair the finality of the class settlement to an unacceptable degree." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 363 (3d Cir. 2001). This rule "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Id.* (internal quotation marks omitted); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 232 F. App'x 161, 167 (3d Cir. 2007) (holding that precedent precluded "relying on class evidence to bolster [ ] non-class claims"); *Drelles v. Metro. Life Ins. Co.*, 357 F.3d 344, 346 (3d Cir. 2003) (finding opt out plaintiffs must seek discovery "*relevant to the opted-out individual claims*" rather than the previously litigated class claims) (emphasis added).

Thus, in accordance with Third Circuit precedent, the Court rejects Plaintiffs' attempts to treat this case as a continuation of *Stevenson* and declines to consider evidence from the prior action to support Plaintiffs' arguments on the relevance of the CCTV footage. To do so would be to permit Plaintiffs to relitigate a settled class action that they opted out of.

### 2.  Regardless, Plaintiffs Cannot Establish Relevance of the CCTV Footage.

Plaintiffs also fail to make a colorable argument about how the requested footage is relevant to their claims in this suit. In fact, details related to the

incarceration of these four individuals doom any possible relevance argument. Specifically, the footage at issue spanned from *June to December 2018*. ECF No. 118-5 (emphasis added). But critically, this is a time period when *none* of these four opt-out Plaintiffs were admitted to the "at-risk" unit. ECF No. 125-3.[7]

Plaintiffs try to argue around this obvious issue claiming that the CCTV footage "would have shown" that Salem County never changed its allegedly improper "at-risk" strip search practices. Mov. Br. at 15-16. This is a non-sequitur that fails to address the critical question of how the information would have been relevant to these four individual plaintiffs.

Instead, Plaintiffs largely couch their position on the conclusory assertion that "the CCTV evidence bears directly on elements of Plaintiffs' claims." Mov. Br. at 44. Beyond that, the only argument Plaintiffs offer is that the evidence supports their *Monell* claims. Mov. Br. at 6. They submit that "the Complaint is replete with references to policy and custom" and defend their pleadings, saying that they could not allege a constitutional violation in support of *Monell* claims without the requested discovery. Reply at 10-11.

Without addressing the sufficiency of Plaintiffs' pleadings, the Court finds Plaintiffs' thin and conclusory arguments insufficient for demonstrating sanctions are warranted here. Their argument that this evidence would support potential

_____

[7] Price was admitted from September 28, 2017 to September 29, 2017; Ottinger was admitted in 2015; Strauss was admitted on September 20, 2016, March 9, 2017, October 7, 2017, May 8, 2019, and January 4, 2020; Provost was admitted on April 17, 2015 and December 7, 2015.

*Monell* claims is simply not enough for the Court to find CCTV footage that *does not depict any of the Plaintiffs* relevant to this action.[8] Rather, the Court finds it "unclear how Plaintiffs can transpose the video evidence of persons, who are not Plaintiffs, and during a time period, when Plaintiffs were not incarcerated, to prove that the Plaintiffs in this case were subject to the same practice." *See* Opp. Br. at 34. Thus, Plaintiffs have failed to satisfy the threshold relevance requirement necessary for asserting a spoliation claim.

### ii. Even If They Had Shown Relevance, Plaintiffs Have Not Demonstrated That CCTV Footage Was Spoliated.

Even assuming *arguendo* Plaintiffs showed that the requested information was relevant, their sanctions motion would still be denied because the record does not show that anything was spoliated.

"The burden is on the moving party to show that spoliation occurred and what sanctions are appropriate." *Goldrich*, 2018 WL 4492931 at *7. Accordingly, for the Court to first make a finding that spoliation occurred pursuant to Rule 37(e), Plaintiffs must show: "(1) certain ESI should have been preserved in anticipation or conduct of litigation; (2) that evidence was lost; (3) the ESI was lost because [Defendants] failed to take reasonable steps to preserve it; and (4) that it cannot be restored or replaced." *Id*. Plaintiffs have not sufficiently sustained their burden.

### 1. Defendants Had No Duty To Preserve CCTV

---

[8] To state a *Monell* claim, a plaintiff must "identify the challenged policy, attribute it to the public entity, and show a causal connection between the execution of the policy or custom and the injury suffered." *McGraw v. Does*, 2019 WL 1493399, at *1 (M.D. Pa. Apr. 4, 2019).

Footage.

"Rule 37(e) does not redefine the duty to preserve; rather, it incorporates the common-law duty to preserve relevant information when litigation is reasonably foreseeable." *Two Canoes LLC v. Addian Inc.*, 2024 WL 2939178, at *4 (D.N.J. Apr. 30, 2024), *report and recommendation adopted*, 2024 WL 3470851 (D.N.J. July 19, 2024). "Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Manning v. Safelite Fulfillment, Inc.*, 2021 WL 3557582, at *6 (D.N.J. Apr. 29, 2021), *report and recommendation adopted*, 2021 WL 3542808 (D.N.J. Aug. 11, 2021).

Plaintiffs claim that "Salem County's duty to preserve CCTV cannot be any clearer," and then list filings in *Stevenson*, which, presumably, Plaintiffs think makes Defendants' duty to preserve evidence relating to them obvious ("a retention letter followed by a class action complaint; followed by a demand for documents; followed by an order to respond to discovery; followed by an OTSC to retain the CCTV; followed by an agreement to preserve the evidence; followed by a formal order memorializing the agreement"). Mov. Br. at 39. However, as Defendants correctly highlight, "the discovery in question was not ordered to be preserved in *this* matter." Opp. Br. at 6 (emphasis added); ECF No. 118-5 at 10-12, 36-40. Rather, "the matter for which it was ordered to be preserved was settled in 2020 with a settlement agreement executed in 2021," (Opp. Br. at 6), at least one year before this litigation was commenced. And Plaintiffs even include as an exhibit to this motion (ECF No. 118-8), a document containing notes made by counsel for class action plaintiffs, *who is*

12

*also Plaintiffs' counsel in this action*, after viewing CCTV footage on April 25, 2019. Plaintiffs, therefore, should not be surprised that the *Stevenson* CCTV footage might not be available and able to be produced in 2023, when Plaintiffs waited years after the *Stevenson* class action concluded to request the information. And it bears repeating that *none* of the *Stevenson* CCTV footage included Plaintiffs in any event because none of these Plaintiffs were admitted to the "at-risk" unit during this time. *Supra* Section III. A. i. 2.

### 2.  Some CCTV Footage Was Lost.

Plaintiffs have satisfied the second element—that ESI was lost. Defendants retained a forensic expert[9] who concluded that an examination of the files on the Network-Attached Storage ("NAS") device where Defendants back up their CCTV footage revealed a number of "zero-byte" or empty files, which likely resulted from "a network connection while the files were being saved, or some type of data corruption during the file transfer operations." ECF No. 125-8. Thus, it is undisputed that certain of the CCTV recordings contained empty files when requested in the instant litigation.

### 3.  The Footage Could Not Have Been Lost Through Any Fault of Defendants.

Plaintiffs cannot satisfy the third element—that footage was lost because

---

[9] On January 11, 2024, the Court ordered Defendants to retain a third-party vendor to "conduct a forensic examination of the hard drive that was preserved in accordance with Judge Chetney's Order" and serve a report from the forensic expert. ECF No. 72. The Order also permitted Plaintiffs to retain their own third-party vendor to examine the hard drive at their own expense. *Id.*

Defendants failed to take reasonable steps to preserve it—since Defendants did not have a duty to preserve the requested videos in the first place. And even if Defendants had such a duty, the Court finds Plaintiffs' arguments regarding Defendants' intent unpersuasive.

Plaintiffs provide nothing beyond "bare assertions" that the footage must have been destroyed. But such bald claims are insufficient to establish that Defendants breached a duty to preserve evidence and do nothing to show that Defendants did anything intentionally. *See Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, 2023 WL 4633925, at *19 (D.N.J. June 29, 2023) (holding that "bare assertions" that actions were not accidental was insufficient to demonstrate evidence was suppressed or withheld). Nor does Plaintiff's expert offer any credible support on this front. Plaintiffs' expert report does nothing more than call Defendants' position on the files "highly implausible" and "not credible" (ECF No. 118-7 at 52), concluding that "it is impossible to rule out the possibility that these files were intentionally destroyed, altered, or deleted" (*id*. at 62). Plaintiffs' briefing echoes this position, stating that Defendants' explanation of what happened during their efforts to transfer the CCTV data is "nonsensical" and an "implausible snafu." Mov. Br. at 19. Plaintiffs may characterize what they believe happened as they see fit, but their conclusory conjecture is not enough as a matter of law to warrant a finding that evidence has been destroyed.

More than that, "[r]equests for production of documents, including electronically stored information, are governed by Rule 34" and "[t]o be subject to

discovery under Rule 34, the documents or electronically stored information sought must be **within the possession, custody, or control of a party**." *APG-Int'l, Inc. v. MERO-TSK GmbH & Co. KG*, 2012 WL 13018967, at *2 (D.N.J. Jan. 12, 2012) (emphasis added). As such, "[w]hen one party seeks to compel production of non-existent items, it is sufficient for the other party to respond that a particular discovery item is not in existence or not in that party's possession." *Id.* Accordingly, despite never being under a duty to preserve evidence, Defendants certainly satisfied their discovery obligations in this litigation by saving "approximately six (6) months of CCTV video," identifying that "the CCTV video files [we]re showing on the NAS but the files ha[d] zero (0) data," and continuing to update the Court on the CCTV footage issue via correspondence from September to December 2023. *See* Opp. Br. at 21. Defendants explain that all the proper steps were taken to preserve the requested CCTV footage, which they believed had been properly saved until September 2023 (*id.* at 24-25) and "[a]ny non-production of documents by Defendants, if any, was an oversight that has been corrected" (*id.* at 28).

Put simply, Plaintiffs' dissatisfaction with the discovery Defendants possessed and produced does not suggest that Defendants had a duty to preserve evidence, let alone that they breached that duty by supposedly destroying discovery. So, even if Defendants did have a duty to preserve evidence, any loss would not be attributable to a failure by Defendants.

### 4. Irrelevant CCTV Footage Need Not Be Restored.

Since it is undisputed that certain of the CCTV videos cannot be retrieved at

this juncture, the pertinent inquiry on the fourth element is whether the lost ESI can be "restored or replaced through additional discovery." *Air Prods. & Chemicals, Inc. v. Wiesemann*, 2017 WL 758417, at *2 (D. Del. Feb. 27, 2017) (quoting Fed. R. Civ. P. 37(e)). "ESI often exists in multiple locations, making a loss from one source harmless when substitute information can be found elsewhere." *Id.* (internal quotation marks omitted).

However, as addressed at length above (*supra* Section III. A. i.), Plaintiffs have not demonstrated the relevance of the CCTV footage to this case. And a party may only "obtain discovery [ ] that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Consequently, by failing to show how the CCTV footage of individuals *who are not Plaintiffs* is relevant to Plaintiffs' claims in this case, they have similarly failed to demonstrate entitlement to seek the information missing from CCTV videos through alternative means.

For these reasons, the Court finds that Plaintiffs have failed to demonstrate that the requested CCTV footage from June to December 2018 was spoliated.

### iii. Even If Footage Was Spoliated, Plaintiffs Have Not Demonstrated Entitlement to Sanctions.

If Plaintiffs had established each of the spoliation elements, "to determine the appropriate sanctions to be imposed, the Court [would have to] find either prejudice to [Plaintiffs] or that [Defendants] acted with the intent to deprive [Plaintiffs] of the ESI's use in the litigation." *Fuhs v. McLachlan Drilling Co.*, 2018 WL 5312760, at *13 (W.D. Pa. Oct. 26, 2018). To make a determination on whether there was an intent to deprive, or bad faith, "the court must find that the spoliating party intended to impair

16

the ability of the potential defendant to defend itself." *Id.* (internal quotation marks omitted). "Prejudice to opposing parties requires a showing the spoliation materially affect[ed] the substantial rights of the adverse party and is prejudicial to the presentation of his case." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 481 (D. Del. 2012), *aff'd sub nom. Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, 2014 WL 545440 (D. Del. Feb. 7, 2014).

In reviewing the appropriateness of sanctions, Third Circuit courts have relied on the following factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

Here, Plaintiffs argue that they have been prejudiced by Defendants' alleged "destruction" of evidence (Mov. Br. at 9, 21) because the "CCTV would have shown that Salem County indeed never changed its two-a-day strip search practice" or "its group strip search practice as claimed" (*id.* at 15-16). But, without showing why this evidence is relevant to Plaintiffs *in this action*, their claims of prejudice have no possibility of success.

And even if Plaintiffs had shown the CCTV footage's relevance, there is no evidence in the record to suggest that Defendants acted with the intention of impairing Plaintiffs' ability to advance their claims. *Fuhs*, 2018 WL 5312760 at *13. Nor does Plaintiffs' rhetoric about Defendants' "extraordinary pattern of dodging

17

court orders" and "disregard" for direction move the Court. Mov. Br. at 40-44. Instead, Defendants' regular correspondence to the Court on their efforts to recover CCTV footage (Opp. Br. at 21) reflect Defendants' sincere efforts to produce responsive discovery despite not receiving notice to preserve five-year-old evidence. Thus, Plaintiffs have failed to establish the appropriateness of sanctions for the claimed spoliation of CCTV footage.

### B. Jail and Medical Records — Plaintiffs are Not Entitled to Sanctions.

The Court next considers the same four spoliation factors in analyzing Plaintiffs' assertion that Defendants destroyed documents from Plaintiffs' jail and medical files—namely, those related to strip searches. *Goldrich*, 2018 WL 4492931 at *7 ("(1) certain ESI should have been preserved in anticipation or conduct of litigation; (2) that evidence was lost; (3) the ESI was lost because plaintiff failed to take reasonable steps to preserve it; and (4) that it cannot be restored or replaced.").

### i. Plaintiffs Have Not Shown Records Were Spoliated.

### 1. Defendants Complied With Their Duty To Preserve Plaintiffs' Jail And Medical Records.

As they do with the CCTV footage, Plaintiffs argue that the *Stevenson* "retention letter and Complaint put Salem County on notice to preserve the absent class member[10] jail and medical records." Mov. Br. at 45. However, again, "the discovery in question was not ordered to be preserved in *this* matter." Opp. Br. at 6,

---

[10] Despite how they identify themselves in their briefing, Plaintiffs opted out of the class action and thus are neither class members nor *absent* class members. ECF No. 42 at 2.

41. For the same reasons discussed above (*supra* Section III. A. ii. 1.), the retention letter from *Stevenson* is insufficient to establish that Defendants had a duty to preserve Plaintiffs' jail and medical records.

Notably though, the Court recognizes that Plaintiffs' jail and medical records are different than the CCTV footage because Defendants were arguably on notice that documentation on *Plaintiffs' own* strip searches would be relevant to their claims in this action. *Manning*, 2021 WL 3557582, at *6. But even if Plaintiffs asserted this argument, the Court would nonetheless find that Defendants complied with their preservation obligations by producing all the documents in their possession. *See APG-Int'l, Inc.,* 2012 WL 13018967 at *2 ("it is sufficient for the other party to respond that a particular discovery item is not in existence or not in that party's possession."); ECF Nos. 125-3 and -10.

### 2. Plaintiffs Have Not Shown Records Were Lost or That Defendants Neglected to Preserve Them.

Plaintiffs fail to establish the second and third spoliation elements. The moving party "must necessarily show that the evidence at issue actually existed, since spoliation sanctions can be imposed only when the party seeking such sanction demonstrates that relevant evidence has been lost." *Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, 2023 WL 4633925, at *17 (D.N.J. June 29, 2023). Instead of making the required showing, Plaintiffs speculate what documents they *think* existed, calling them "missing" or "destroyed" while ignoring Defendants' certification that any documents not produced were not in their possession (ECF Nos. 125-3 and -

10; Opp. Br. at 27) and accusing Defendants of knowingly providing false answers to interrogatories (Mov. Br. at 25; Reply at 14-17).

Plaintiffs' conjecture misses the mark. Plaintiffs have provided the Court with no basis for concluding that Plaintiffs' medical or jail records have been lost or "destroyed." As such, the Court finds that Plaintiffs have failed to establish the second or third spoliation elements.

### 3. Records Not Lost Need Not Be Restored.

On the final spoliation element, Defendants have certified that they produced all responsive documents in their possession. Opp. Br. at 29 (citing ECF Nos. 125-3 and -10). To that end, the Court need not determine whether "substitute information can be found elsewhere." *Air Prods. & Chemicals, Inc.*, 2017 WL 758417 at *2.

Plaintiffs have failed to sufficiently demonstrate that Defendants spoliated their medical or jail records.

### ii. Even If Records Were Spoliated, Plaintiffs Have Not Demonstrated Entitlement to Sanctions.

Again, had Plaintiffs established the spoliation elements, "to determine the appropriate sanctions to be imposed, the Court must find either prejudice to [Plaintiffs] or that [Defendants] acted with the intent to deprive [Plaintiffs] of the ESI's use in the litigation." *Fuhs*, 2018 WL 5312760 at *13.

Plaintiffs argue that Defendants' conduct has been willful and "[t]he reason that Salem County is not credible is that there is no reason for the documents not being produced and no investigation for the reason missing." Mov. Br. at 46. Plaintiffs are again entirely disregarding Defendants' acknowledgement that certain

20

documents are no longer in their possession. *See* Opp. Br. at 29. But again, Plaintiffs'
dissatisfaction with documents produced years after *Stevenson* settled does not
translate to bad faith on Defendants' part or prejudice to Plaintiffs.  And on this
record, there exists no basis for sanctions.

## IV.    CONCLUSION

Plaintiffs have presented arguments that fail to establish the spoliation of any
requested discovery. As such, Plaintiffs have not demonstrated that they are entitled
to the imposition of sanctions against Defendants. Accordingly,

**IT IS** on this 5th day of June 2025

**ORDERED** that Plaintiffs' motion for Rule 37 sanctions (ECF No. 118) is
**DENIED**; and it is further

**ORDERED** that the Clerk is to terminate ECF No. 118.

s/ Justin T. Quinn
HON. JUSTIN T. QUINN
United States Magistrate Judge

--terminates ECF No. 118